IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EVELYN SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACT. NO. 2:20-cv-596-ECM |
| | ) [WO] |
| SCOTT HARRIS in his individual capacity, *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Plaintiff Evelyn Scott, a former employee of the Alabama Department of Public Health (the "Department" or "ADPH"), brings this action against her former supervisors, Scott Harris and Lisa Pezent (collectively, "Defendants"). In her Second Amended Complaint (the operative complaint), the Plaintiff brings claims of race discrimination and retaliation in violation of 42 U.S.C. § 1981 pursuant to 42 U.S.C. § 1983, and a claim of "Discrimination in Violation of the Fourteenth Amendment" pursuant to § 1983. All claims are brought against the Defendants in their individual capacities.

Now pending before the Court is the Defendants' motion to dismiss for failure to state a claim. (Doc. 38).[1] The motion is fully briefed and ripe for review. After careful

---

[1] The Defendants also assert, in passing, that the Second Amended Complaint is due to be dismissed for lack of subject matter jurisdiction. (*See* doc. 38 at 1, 3, 24). However, the Defendants do not articulate why they believe the Court lacks subject matter jurisdiction. The Court is satisfied that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

consideration, the Court concludes that the Defendants' motion is due to be GRANTED IN PART and DENIED IN PART.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "On a motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56. This

pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citation omitted).

### IV.  FACTUAL AND PROCEDURAL BACKGROUND[2]

The Plaintiff began working at the Department in approximately August 2007. At all material times, she worked in the Department's Health Care Facilities Division. The Defendants were in the Plaintiff's supervisory chain of command. On July 23, 2019, the Defendants allegedly imposed unjustified discipline on the Plaintiff for purported deficiencies in the Plaintiff's job performance, specifically her failure to properly investigate or conduct a survey of a nursing home. Several of the Plaintiff's white coworkers who committed the same or similar infractions were not disciplined. Also on July 23, 2019, the Defendants gave the Plaintiff a negative performance appraisal which did not accurately reflect her job performance and made her ineligible for a raise in August 2019. The Plaintiff's white co-workers who committed the same or similar infractions did not receive negative performance appraisals.

The Plaintiff also alleges that "[d]uring the course of the Plaintiff's employment and as recently as July 2019, she engaged in statutorily protected conduct by opposing racially discriminatory conduct she reasonably believed was unlawful both subjectively and

---

[2] This recitation of the facts is based upon the Plaintiff's Second Amended Complaint. The Court recites only the facts pertinent to resolving the Defendants' motion to dismiss. At this stage of the proceedings, for purposes of ruling on the motion, the facts alleged in the Second Amended Complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to the Plaintiff.

objectively by reporting discrimination through the Department's EEO office." (Doc. 25 at 3, para. 18). Thereafter, on July 23, 2019, the Defendants imposed unjustified discipline on the Plaintiff and gave the Plaintiff a negative performance appraisal which did not accurately reflect her job performance and made her ineligible for a raise in August 2019.

The Plaintiff filed her original complaint on August 14, 2020, naming as defendants the Department and Harris in his official and individual capacities. (Doc. 1). The Plaintiff later agreed to dismiss the claims against the Department and against Harris in his official capacity. (Doc. 19). On September 7, 2021, the Plaintiff filed an Amended Complaint naming as defendants Harris and Pezent in their individual capacities. (Doc. 22). The Court subsequently granted the Plaintiff's motion for leave to file a Second Amended Complaint, (doc. 34), and the Plaintiff filed her Second Amended Complaint on April 26, 2022, (doc. 35).

## V. DISCUSSION

The Defendants move to dismiss the Second Amended Complaint in its entirety. The Court first will address the Plaintiff's § 1981 claims and then will address the Fourteenth Amendment claim.

### A. § 1981 Claims

Section 1981 provides that all persons have the same right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The right "to make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

4

In addition to prohibiting race-based discrimination in employment, § 1981 prohibits an employer from retaliating against an employee in response to the employee's complaint of race-based discrimination. *See Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412–13 (11th Cir. 1998). A claim against state actors for violations of § 1981 must be brought pursuant to § 1983. *Baker v. Birmingham Bd. of Ed.*, 531 F.3d 1336, 1337 (11th Cir. 2008).

### 1. § 1981 Retaliation Claim

The Defendants contend that the Plaintiff fails to plausibly allege a retaliation claim under § 1981. Absent direct evidence, when analyzing a claim of race-based retaliation pursuant to § 1981, courts apply the *McDonnell Douglas*[3] burden-shifting framework. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). To establish a prima facie case of retaliation under this framework, the plaintiff must show that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.* at 1307–08. However, to survive a motion to dismiss, the Plaintiff is not required to plead facts sufficient to establish a prima facie case under the *McDonnell Douglas* framework. *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017), *abrogated on other grounds by Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, 510 (2002) (explaining that the *McDonnell Douglas* prima facie case "is an evidentiary standard, not a pleading

---

[3] In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court set forth the now familiar burden-shifting framework for proving intentional discrimination using circumstantial evidence.

requirement"). Instead, the plaintiff "must simply provide enough factual matter to plausibly suggest intentional discrimination." *See Evans*, 850 F.3d at 1253.

The Defendant argues that the Plaintiff fails to plausibly allege a retaliation claim for a number of reasons, including that the Plaintiff fails to allege sufficient facts to demonstrate that she engaged in statutorily protected activity. "An employee's complaint about discrimination constitutes protected activity if the employee could 'reasonably form a good faith belief that the alleged discrimination existed.'" *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (citation omitted). The complaint may be formal or informal. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016). Here, the Plaintiff alleges that "[d]uring the course of the Plaintiff's employment and as recently as July 2019, she engaged in statutorily protected conduct by opposing racially discriminatory conduct she reasonably believed was unlawful both subjectively and objectively by reporting discrimination through the Department's EEO office." (Doc. 25 at 3, para. 18). However, this allegation is conclusory, which is insufficient. *See Iqbal*, 556 U.S. at 678. The Second Amended Complaint does not allege facts concerning what allegedly discriminatory conduct the Plaintiff opposed. The discriminatory conduct alleged in the Second Amended Complaint concerns the discipline and negative performance appraisal the Plaintiff received. However, the Plaintiff alleges that these actions took place after she reported allegedly discriminatory conduct through the Department's EEO office. Thus, the Defendants and the Court are left to guess at what discriminatory conduct the Plaintiff opposed. While the Plaintiff is not required to plead sufficient facts to make out a prima facie case, the pleading deficiencies with respect to her

retaliation claim prevent the Plaintiff from stating a plausible claim for relief.[4] *See Hopkins v. Saint Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 566–67 (11th Cir. 2010) (per curiam) (affirming dismissal of plaintiff's Title VII retaliation claim because the complaint did not allege sufficient facts to establish that he engaged in statutorily protected activity).[5]

For the reasons stated, the Plaintiff has failed to state a plausible retaliation claim under § 1981. Accordingly, the § 1981 retaliation claim is due to be dismissed.

### 2. § 1981 Race Discrimination

The Defendants also argue that the Plaintiff's § 1981 race discrimination claim should be dismissed. First, the Defendants argue that the Plaintiff's § 1981 discrimination claim is barred by the statute of limitations. The Defendants have the burden to establish the applicability of a statute of limitations affirmative defense. *See Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). In their motion to dismiss, the Defendants fail to state what the applicable statute of limitations is, let alone cite any authority in support of their position. They simply assert that the statute of limitations bars the Plaintiff's claim and then proceed to discuss relation back under Federal Rule of Civil Procedure 15. The Defendants' failure to even assert the applicable limitations period is especially problematic here because the statute of limitations for § 1981 discrimination

---

[4] The deficiencies in the Plaintiff's retaliation claim existed in the original Complaint and the First Amended Complaint. (Doc. 1 at 2, para. 8; doc. 22 at 4, para. 18). The Defendants identified these deficiencies as a basis for dismissal in each of their motions to dismiss. (Doc. 6 at 10; doc. 23 at 13). Nonetheless, the Plaintiff failed to remedy the deficiencies in the Second Amended Complaint.

[5] While the Court recognizes that *Hopkins* is nonbinding, the Court finds its analysis persuasive. Moreover, its analysis is instructive because the legal elements required to establish a retaliation claim under § 1981 and Title VII are the same. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

claims can be either two years or four years. *See Baker*, 531 F.3d at 1337–39. The Defendants' invocation of relation back principles thus rings hollow in light of their failure to identify the baseline against which the Court should analyze relation back. Therefore, the Court concludes that the Defendants have failed at this stage to demonstrate that the statute of limitations bars the Plaintiff's § 1981 race discrimination claim.[6]

Next, the Defendants argue that the Plaintiff fails to sufficiently plead her § 1981 race discrimination claim. "The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). To show race discrimination, a plaintiff may use either direct or circumstantial evidence. *Id.* Thus, a § 1981 discrimination claim which relies upon circumstantial evidence is analyzed under the *McDonnell Douglas* framework. *See id.* To prevail on a § 1981 discrimination claim, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). The plaintiff may not rely on a "motivating factor" theory. *Id.* at 1017–19.

As stated above in Part A.1, to survive a motion to dismiss, the Plaintiff is not required to plead facts to establish a prima facie case under the *McDonnell Douglas* framework. *Evans*, 850 F.3d at 1253; *see also Swierkiewicz*, 534 U.S. at 508, 510. Instead,

---

[6] The Plaintiff argues that the applicable statute of limitations is four years. Assuming without deciding that the Plaintiff is correct, the alleged adverse actions took place on July 23, 2019, and *all* versions of the complaint were filed within four years of that date.

the Plaintiff "must simply provide enough factual matter to plausibly suggest intentional discrimination." *Evans*, 850 F.3d at 1253.  Therefore, at the motion to dismiss stage, the Court must determine whether the Plaintiff has pleaded sufficient facts to plausibly suggest discrimination "under the but-for causation standard." *Comcast Corp.*, 140 S. Ct. at 1019.  To show but-for causation, the Plaintiff must plausibly allege that racial animus had a "determinative influence" on the Defendants' adverse employment actions. *See Ziyadat v. Diamondrock Hospitality Co.*, 3 F.4th 1291, 1297–98 (11th Cir. 2021) (citation omitted).

The Defendants argue that the Plaintiff fails to sufficiently plead "but for" causation.  They contend that the Plaintiff's complaint is "bereft of specific facts" sufficient to raise her claim above the speculative level. (Doc. 38 at 9).  The Court disagrees.  The Plaintiff alleges, *inter alia*, that she was disciplined and received a negative performance appraisal due to purported deficiencies in her job performance while white co-workers who had the same or similar deficiencies were not disciplined and did not receive negative performance appraisals.  Accepting the factual allegations as true and drawing all reasonable inferences in the Plaintiff's favor, the Court finds that the Second Amended Complaint plausibly suggests that, but for her race, the Plaintiff would not have been disciplined and would not have received a negative performance appraisal.  Put differently, the Plaintiff has plausibly alleged that racial animus had a determinative influence on the discipline and the negative performance appraisal. *See Ziyadat*, 3 F.4th at 1297–98.

The Defendants also argue that the Plaintiff's allegations of discriminatory discipline and receiving "downgraded performance appraisals" unlike her white co-workers, "without more, is not plausible in light of the obvious alternative explanation—

the decisionmakers simply gave discipline and a performance appraisal score because it was warranted." (*Id.* at 11). This argument fails because it rests on an interpretation of the Second Amended Complaint that does not view the facts and draw all reasonable inferences in the Plaintiff's favor. As explained above, viewing the Second Amended Complaint in the light most favorable to the Plaintiff, she has plausibly alleged a § 1981 race discrimination claim.

Next, the Defendants argue that Harris is entitled to qualified immunity on the Plaintiff's § 1981 race discrimination claim[7] because the Second Amended Complaint fails to sufficiently set forth Harris' individual role in the alleged violation of the Plaintiff's rights. They do not argue that Pezent is entitled to qualified immunity. Qualified immunity protects government officials from suit if they are "performing discretionary functions" and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In support of the argument that the Second Amended Complaint fails to sufficiently set forth Harris' individual role, the Defendants contend that the Plaintiff merely alleges that Defendant Harris, "individually, and acting in his official capacity and under color of state law, intentionally, willfully, maliciously, fraudulently, in bad faith, with deliberate indifference and/or without jurisdiction and/or justification discriminated against the Plaintiff and deprived her of her federal statutory and constitutional rights,"

---

[7] The Defendants also argue that Harris is entitled to qualified immunity on the Plaintiff's § 1981 retaliation claim. Because the Court concludes that the Plaintiff fails to state a plausible § 1981 retaliation claim, the Court pretermits discussion of the Defendants' qualified immunity argument as to the retaliation claim.

(doc. 38 at 20–21),[8] which the Defendants contend "epitomizes speculation," (doc. 38 at 21). However, as the Plaintiff points out, she also alleges that "Defendants"—Scott Harris and Lisa Pezent—disciplined her and gave her a negative performance appraisal due to purported deficiencies in her job performance, but that the Defendants did not discipline or give negative performance appraisals to white employees who had similar purported deficiencies in their job performances. (Doc. 35 at 2–3, paras. 8–13). The Plaintiff thus alleges that Harris was directly involved in the adverse employment actions. The Defendants do not acknowledge or contend with these allegations. Thus, the Court concludes that the Second Amended Complaint sufficiently alleges Harris' individual role in the alleged violation of the Plaintiff's rights.

The Defendants do not argue that the law was not clearly established or make any other arguments supporting Harris' purported entitlement to qualified immunity. Therefore, the Court finds that at this stage Harris is not entitled to qualified immunity on the Plaintiff's § 1981 race discrimination claim.

Accordingly, for the reasons stated, the Court finds that Defendants' motion to dismiss the Plaintiff's § 1981 race discrimination claim is due to be denied.

---

[8] This portion of the Defendants' motion to dismiss purports to quote paragraph 24 of the Plaintiff's Second Amended Complaint. However, paragraph 24 actually reads: "At all material times, Defendants Harris and Penzent [sic], acting individually, and/or under color of state law, intentionally, willfully, maliciously, fraudulently, in bad faith, with deliberate indifference and/or without jurisdiction and/or justification discriminated against the Plaintiff and deprived her of her federal statutory and constitutional rights." (Doc. 35 at 4, para. 24).

### B. Discrimination in Violation of the Fourteenth Amendment

In the Second Amended Complaint, the Plaintiff brings a claim of Discrimination in Violation of the Fourteenth Amendment (Count 3), which she premises upon the same alleged conduct of the Defendants as her § 1981 discrimination and retaliation claims. Based on the complaint and the Plaintiff's response in opposition to the Defendants' motion to dismiss, the Court construes the claim in Count 3 as alleging a violation of the Equal Protection Clause of the Fourteenth Amendment.

"The Equal Protection Clause of the Fourteenth Amendment prohibits race . . . discrimination in public employment." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018). The Eleventh Circuit has found various race-based employment actions by public officials, "including those concerning discipline, promotions, transfers, reclassifications, and termination," to be violative of the Equal Protection Clause. *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003). "Employment discrimination claims against state actors for violation of the Equal Protection Clause are cognizable under § 1983" and use the same analytical framework as discrimination claims brought under Title VII and § 1981. *Hornsby-Culpepper*, 906 F.3d at 1312 n.6; *see also Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (stating that the legal elements of a race discrimination claim under § 1981 and the Equal Protection Clause are "identical").

The Defendants argue that the Equal Protection claim should be dismissed because the Plaintiff cannot show that the Defendants had a discriminatory intent or purpose. The Plaintiff alleges that she was disciplined and received a negative performance appraisal due

to purported deficiencies in her job performance, while white co-workers who had the same or similar deficiencies were not disciplined and did not receive negative performance appraisals. Because the Court concludes, for the reasons explained above, that the Plaintiff alleges sufficient facts to state a plausible claim of race discrimination in violation of § 1981, the Court also concludes that the Plaintiff alleges sufficient facts to state a plausible claim of race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. *Cf. Lewis*, 934 F.3d at 1185, 1189 (concluding that the plaintiff produced sufficient evidence to survive summary judgment on her race discrimination claims brought under § 1981 and the Equal Protection Clause). Accordingly, the Defendants' motion to dismiss the Fourteenth Amendment claim is due to be denied.[9]

## VI. CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that the Defendants' motion to dismiss (doc. 38) is GRANTED IN PART to the extent that the § 1981 retaliation claim (Count 2) is DISMISSED, and DENIED as to the remaining claims.

---

[9] The Defendants also argue that the Fourteenth Amendment claim should be dismissed because the Equal Protection Clause does not give rise to a generic retaliation claim under Eleventh Circuit precedent. To the extent that the Plaintiff's Fourteenth Amendment claim is premised upon her § 1981 retaliation claim, this theory of a Fourteenth Amendment violation fails in light of the Court's conclusion that the Plaintiff has failed to plead a plausible § 1981 retaliation claim. Additionally, "[a] pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause." *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) (per curiam). To the extent the Plaintiff argues that she was disciplined or received a negative performance appraisal "because of her expressive activity, that claim [would] arise[] under the First Amendment." *See id.* Moreover, to the extent the Plaintiff links the Defendants' alleged retaliatory adverse employment actions to her race, "that allegation constitutes part of her equal protection discrimination . . . claim." *See id.* Nonetheless, for the reasons stated, the Plaintiff has stated a plausible claim for race discrimination in violation of the Equal Protection Clause; thus, the motion to dismiss the Fourteenth Amendment claim is due to be denied.

All other claims against the Defendants remain pending.

Done this 15th day of June, 2022.

                                            /s/ Emily C. Marks
                                   EMILY C. MARKS
                                   CHIEF UNITED STATES DISTRICT JUDGE